OPINION OF THE COURT
Edith Miller, J.
Pursuant to section 651 of the Family Court Act, the Commissioner of Social Services has filed petitions in the Family Court seeking custody of David T. and other minor children similarly situated. The respondent herein is the United States Catholic Conference, Migration Refugee Service, a voluntary resettlement agency under contract with the United States Department of State. In 1979 the respondent assumed the responsibility for David T. and approximately 500 to 600 IndoChinese children, mostly boys between the ages of 12 and 17.
The children herein are considered by the United States Government to be Indo-Chinese refugee unaccompanied minors. The United States government defines such a child as "(1) a person who has not yet attained his or her 18th birthday, or the age of majority in the State in which he is residing, (2) who has no known immediate adult relatives in *957 the United States, (3) who has been lawfully admitted to the United States in parole status, and (4) who meets the general definition of an Indo-Chinese refugee: an alien who (A) because of persecution or fear of persecution on account of race, religion, or political opinion fled from Cambodia, Vietnam, or Laos; and (B) cannot return there because of fear of persecution on account of race, religion, or political opinion”. (SSA-79-04.) At the time that the custody petitions were filed, Law Guardians from the Legal Aid Society were assigned to represent each child.
The court did not authorize service to be made upon the parents or relatives notifying them of the proceedings as such service or attempts to make such service would possibly subject the parents to potential persecution by their respective governments. The last residence of the children, prior to their admission into the United States, was one of the several refugee camps located in Southeast Asia. In some cases, the parents of the children were killed during the escape from Indo-China. In other cases the parents helped the children escape but did not try to escape themselves. In still other cases the children seized the opportunity to escape without consulting their parents.
On January 7, 1980, the Family Court in New York County held the first series of hearings which consisted of 10 cases. In respect to David T., which was the first case heard, detailed information was elicited and subjected to cross-examination by the Law Guardian concerning how the children came into the care of the respondent agency. Based on the testimony and exhibits the court finds that: (1) the children came into the care of the respondent agency at the request of the United States Department of State and the United States Department of Health, Education and Welfare; (2) that the respondent agency has been charged by the United States Government with the responsibility of finding foster homes for the children through the appropriate State or local public child welfare authorities; and (3) that the petitioner herein is the Commissioner of the Department of Social Services of the City of New York. That this agency is a duly authorized child caring agency pursuant to section 371 of the Social Services Law of the State of New York. By stipulation, the testimony relating to the respondent agency’s relationship to the children became part of the record of the other nine cases to avoid repetition. Apart from this stipulation, each case has been and will *958 continue to be considered separately. A custody proceeding requires that the court make an order of disposition in accordance with the best interest of the child. Although the children are only in the country on parole status they must be given the same protection as children who are citizens.
In respect to David T., the court finds that he is under the age of 18 years, having been born on June 30, 1965. That he has been lawfully admitted to the United States on parole status as an Indo-Chinese refugee unaccompanied minor. That he has no parents, relatives or legal guardian in New York State or the United States.
David T. is presently residing at the Mission of the Immaculate Virgin where he has been living since September, 1979. Although the Indo-Chinese Refugee . Assistance Program, a specialized unit with the Department of Social Services, has heen actively planning for him, he has remained in the program longer than the average 8 to 10 weeks. This initial period is a temporary program structured for orientation, medical, dental and psychological screening and for preplacement interviews and visits with potential foster parents. David T. has tried out three foster homes without success. Part of the reason why adjustment has been more difficult for him than it has been for other children is because his older brother was killed in one of the refugee camps. In recent weeks however, David T., with counseling has begun to work through his problems. He is scheduled in the near future for a weekend visit in another foster home.
The court has further considered that the Department of Health, Education and Welfare policy mandates that the State or local public agency accept legal responsibility for the care and maintenance of every unaccompanied minor. This procedure would thereby assure that every such child would receive the full range of assistance, care and services as any other child under the care of the State. Moreover, it would give the children a legal custodian or legal authority to act in place of the child’s unavailable parents. Although the Department of Social Services has a mechanism pursuant to section 384 of the Social Services Law which could place the children in foster care by a voluntary placement instrument, the court finds that it would be inappropriate to require the Department of Social Services to contact the child’s natural parents because of potential danger to the parents. The court does and must take judicial notice of the tragic events in Indo-China *959 which have resulted in an interruption of the traditional parent-child relationship. A custody petition is the most practical mechanism to achieve this end.
Therefore, the court finds that it is in the best interests of David T. to award custody of this child to the Commissioner of Social Services without prejudice to the rights of the natural parents. Should the natural parents seek the return of this child the case can be calendared immediately as the court retains continuing jurisdiction.
Inasmuch as the Law Guardian wished to follow up on the agency’s commitment to place David T. in a permanent foster home, the petitioner is directed to forward a written progress report to the Law Guardian on or before February 15, 1980.